# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IRIS FELICIANO,  :
        **Plaintiff,**  :
          :
        v.  :    **CIVIL ACTION NO. 17-942**
          :
**COCA-COLA REFRESHMENTS**  :
**USA, INC.,** *d/b/a,*  :
**COCA-COLA REFRESHMENTS,**  :
        **Defendant.**  :

FILED

DEC 13 2017

## MEMORANDUM OPINION

**Rufe, J.**                                   **December** 13th, 2017

       Plaintiff Iris Feliciano brought suit against her employer, Defendant Coca-Cola Refreshments USA, Inc., alleging employment discrimination and retaliation on the basis of gender and disability as well as violations of the Family and Medical Leave Act ("FMLA"). Defendant moves to dismiss the Complaint for failure to state a claim. For the reasons discussed below, Defendant's motion will be granted with respect to Plaintiff's claims under the Americans with Disabilities Act ("ADA"), the retaliation provision of the FMLA, and the Pennsylvania Human Rights Act ("PHRA"), but denied with respect to Plaintiff's gender discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and interference claim under the FMLA.

## I.    BACKGROUND

       The Complaint alleges the following facts, which are assumed to be true for purposes of the Motion to Dismiss unless otherwise stated.

       At all relevant times, Plaintiff worked as a shipping and receiving clerk at Coca-Cola. In late 2015, she complained to human resources and to the manager of the distribution center, Barry Schraeder, that her manager, Scott Levitt, was making "reports" against her which she

believed were unfair and harassing. Human resources personnel responded by telling her that she was not being harassed. Mr. Schraeder went a step further: he explained to Plaintiff that Mr. Levitt's "problem with her at work" was that he was "intimidated" by her intelligence and perceived aggressiveness and advised Plaintiff to "bring her confidence level down" so Mr. Levitt would not be intimidated.

Two days after Plaintiff's meeting with Mr. Schraeder, Mr. Levitt called Plaintiff and three other employees into his office, and instructed Plaintiff to move her desk and belongings from a room she shared with her supervisors to a "cold and dirty" storage room, which "union drivers used to change out of their clothes." Plaintiff resisted the move, and after some argument, Mr. Levitt allowed Plaintiff to instead move her belongings to the inventory analyst room attached to the storage room.[1]

Over the next few months, Mr. Levitt repeatedly complained about alleged issues with Plaintiff's work and conduct. In January 2016, Mr. Levitt directed Plaintiff to attend a mandatory conference that Plaintiff had already attended multiple times. When Plaintiff protested, Mr. Levitt told her that her reply was "unacceptable and disrespectful" and then discussed the incident with others. Later, in February, Mr. Levitt accused Plaintiff of slamming her door. Plaintiff alleges that her male colleagues were not held to the same standards of conduct.

Plaintiff alleges that despite having a heavier work load than her male coworkers, she was paid less. Moreover, while another male employee with less seniority was permitted to change his own shift schedule without penalty, Plaintiff was denied permission, without

---

[1] Initially, Plaintiff's male colleague was directed to move from the storage room to the analyst room, but after Plaintiff was moved to the analyst room, he was told to remain in the storage room.

explanation, to change her shift to accommodate her medical appointments. Plaintiff also alleges that at least one of her colleagues was told by his supervisors not to speak with her while she was in the office.

In late June 2016, Plaintiff sent emails to Mr. Levitt regarding "unacceptable and offensive treatment" from other employees. The next month, she filed an internal discrimination complaint with Defendant's human resources team. On August 3, 2016, Plaintiff took formal FMLA leave, and was approved for short-term disability in September 2016. After receiving no response to her internal complaint, she cross-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission in October 2016. After receiving a Right to Sue Letter from the EEOC, she timely filed her Complaint in this case on March 1, 2017, asserting claims of 1) sex discrimination and retaliation in violation of Title VII (Count I); disability discrimination and retaliation in violation of the ADA (Count II); discrimination in violation of the PHRA (Count III); and FMLA interference and retaliation (Count IV).

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[2] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

non-moving party.[3] Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[4] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[5] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[6] In deciding a motion to dismiss, courts generally may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."[7]

## III. DISCUSSION

### 1. Sex Discrimination and Retaliation (Count I)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ."[8] A discrimination claim may be established by either direct or indirect evidence of discrimination. When a plaintiff relies on indirect evidence, she must adequately plead a *prima facie* case of discrimination by sufficiently alleging that 1) she is a member of a protected class; 2) she was qualified for the position at issue; 3) she suffered an adverse employment action; and 4) the circumstances

---

[3] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[4] *Twombly*, 550 U.S. at 555, 564.

[5] *Id.* at 570.

[6] *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotation marks omitted).

[7] *Lum v. Bank of America,* 361 F.3d 217, 222 n. 3 (3d Cir.2004).

[8] 42 U.S.C. § 2000e–2(a)(1).

4

surrounding the adverse employment action support a plausible inference of illegal discrimination.[9]

Here, Plaintiff has alleged specific statements made by the distribution center manager, Mr. Schraeder, that her supervisor, Mr. Levitt, "had a problem . . . with her at work" because he was "intimidated by Plaintiff's intelligence" and "aggressive[ness]" and that she should "bring her confidence level down."[10] She further alleges incidents in which Mr. Levitt reprimanded her for challenging his instruction and for slamming her door, while male colleagues were not held to the same standards. Moreover, while her male colleague was permitted to unilaterally change his shift time, Plaintiff was denied permission to change her shift time to meet her medical appointments, and despite having a heavier work load than her male colleagues, she alleges that she was paid less. These allegations are insufficient to support a plausible claim of discrimination on the basis of sex.

First, "Title VII prohibits discrimination against women for failing to conform to a traditionally feminine demeanor and appearance," and an employer discriminates on the basis of sex when it "acts on the basis of a belief that a woman cannot be aggressive, or that she must not be."[11] At this stage of the proceedings, it can be reasonably inferred from Mr. Schraeder's statements that Plaintiff was reprimanded by her supervisor because of stereotypes regarding inappropriate behavior for her gender. Her allegations that her male colleagues were not held to the same standards of conduct in the workplace for which she was reprimanded further support

---

[9] *Mandel v. M + Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).

[10] Compl. at ¶¶ 31, 33, and 34.

[11] *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 552 (E.D. Pa. 2017) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)) (internal quotation marks omitted); *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 290 (3d Cir. 2009).

her claim. Moreover, her allegations that her male colleagues were given more flexibility in their schedules and higher pay for less work give rise to a plausible inference of disparate treatment motivated by intentional discrimination.[12]

Plaintiff's allegations also sufficiently state a claim of gender-based retaliation. To plead a *prima facie* case of retaliation under Title VII, a plaintiff must allege facts that show (1) she engaged in activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.[13] In the retaliation context, unlike in the discrimination context, a Plaintiff alleging an adverse action need not show that the action affected the "conditions of employment," as long as the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[14]

Here, the Complaint states that two days after Plaintiff met with Mr. Schraeder to complain that Mr. Levitt's reports against her were unfair and harassing, Mr. Levitt directed her to move out of the room she shared with her supervisors to a storage room which he knew was being used by union drivers to change their clothes. Plaintiff further alleged that in the following

---

[12] Defendant seems to contend that Plaintiff has not suffered an adverse employment action that would support her gender discrimination claim. Reply at 2 n.1. However, Plaintiff has specifically pleaded that she was paid less than her colleagues, that she was denied the same scheduling flexibility as her male colleague, and that she was subject to unfair reports and reprimands by her supervisor, all of which, at this stage of the case, could plausibly constitute actions that alter the "compensation, terms, conditions, or privileges of employment." *Magerr v. City of Phila.*, No. 15-4264, 2016 WL 1404156, at *5 (E.D. Pa. Apr. 11, 2016) (internal quotation marks and citation omitted). Moreover, the pattern of antagonizing conduct pleaded by the Plaintiff, including Mr. Levitt's series of reprimands, his instruction to move her desk and belongings to a storage room, and the instruction to her colleague not to speak with her at work, could be sufficiently "severe or pervasive" to create a hostile work environment. *Moody v. Atlantic City Bd. of Educ.*, 870 F.3d 206, 213-14 (3d Cir. 2017).

[13] *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).

[14] *Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 714-15 (E.D. Pa. 2010).

months, Mr. Levitt reprimanded her for allegedly disrespectful conduct and her male colleague was told not to speak with her while in the office.

Contrary to Defendant's contentions, the Court finds that these instances of alleged antagonism may reasonably dissuade a worker from engaging in protected conduct, and therefore, Plaintiff has adequately pleaded an adverse employment action. Plaintiff also has adequately pleaded that her meeting with Mr. Schraeder was protected under Title VII, and that Mr. Levitt's subsequent actions were related to that meeting. Although Plaintiff does not specifically allege that she discussed gender discrimination during her meeting with Mr. Schraeder, one can plausibly infer from Mr. Schraeder's statements in response that he understood her concerns regarding Mr. Levitt to be related to her gender.[15] Moreover, the "temporal proximity" between Plaintiff's meeting with Mr. Schraeder and Mr. Levitt's subsequent actions is sufficient to support an inference of causation.[16] Accordingly, Defendant's motion is denied with respect to Plaintiff's sex discrimination and retaliation claims in Count I.

## 2. Disability Discrimination and Retaliation (Count II)

In contrast, Plaintiff's allegations are not sufficient to support her ADA claims. To plead a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that he is (1) disabled within the meaning of the ADA, (2) can perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action as a result

---

[15] *Puidokas v. Rite-Aid of Pennsylvania, Inc.*, No. 09-2147, 2010 WL 1903590, at *3 (M.D. Pa. May 10, 2010) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 571 (3d Cir.2002)) ("Under a 'perception theory' of retaliation, a defendant violates the anti-retaliation provision of Title VII if, believing that the plaintiff is engaged in a protected activity, it intentionally retaliates against the plaintiff because of its belief.").

[16] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

of discrimination based on his disability.[17] The denial of a reasonable accommodation can itself constitute an adverse employment action.[18]

Plaintiff asserts that she was either disabled or perceived as disabled at the time she requested, and was denied, a shift change to reasonably accommodate her medical appointments. However, Plaintiff has not adequately pleaded she was disabled within the meaning of the ADA at the time that she requested an accommodation. The ADA defines a qualifying disability as "a physical or mental impairment that substantially limits one or more of [the employee's] major life activities."[19] The Complaint merely recites this standard, and simply alleges that Plaintiff later received short-term disability benefits, without identifying Plaintiff's impairment or providing even a "short and plain statement of the impact the impairment has on at least one major life activity."[20] This is insufficient to plausibly plead a disability. Accordingly, Plaintiff's claim of disability discrimination under the ADA will be dismissed.

Plaintiff has also failed to plead a disability retaliation claim. To make out a retaliation claim, the employee must allege (1) a protected employee activity, (2) an adverse employment action; and (3) a causally connection between the protected activity and the adverse action.[21] Here, even if Plaintiff's request for a shift change was a protected activity under the ADA, Plaintiff has failed to allege that any adverse employment actions resulted from her request for a shift change. The denial of a requested accommodation does not by itself constitute

---

[17] *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000); *Gaul v. Lucent Technologies Inc.*, 134 F.3d 576, 580 (3d Cir. 1998).

[18] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

[19] 42 U.S.C. § 12102(1)(a); *Amiot v. Kemper Ins. Co.*, 122 F. App'x 577, 580 (3d Cir. 2004).

[20] *Heard v. St. Luke's Hosp.*, No. 08-5494, 2009 WL 3081513, at *3 (E.D. Pa. Sept. 28, 2009).

[21] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Kurylo v. Parkhouse Nursing & Rehab. Ctr., LP.*, No. 17-0004, 2017 WL 1208065, at *6 (E.D. Pa. Apr. 3, 2017).

retaliation for the request—such reasoning would result in a claim for unlawful retaliation every time a request for accommodation, reasonable or not, is denied.[22]

Accordingly, Count II of the Complaint will be dismissed without prejudice.

### 3. PHRA Claims (Count III)

Plaintiff concedes that she has not exhausted her administrative remedies with respect to her claims under the PHRA because she failed to wait one year after filing her PHRA complaint before filing her Complaint in this action.[23] Accordingly, Count III of the Complaint will be dismissed without prejudice, and Plaintiff will be granted leave to include her PHRA claims in an amended complaint.

### 4. FMLA Violations (Count IV)

Plaintiff has alleged both interference and retaliation in violation of the FMLA. To state a claim for interference under the FMLA, an employee must show that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA."[24] Plaintiff contends that although she was granted FMLA leave in August 2016, Defendant previously interfered with her FLMA rights when Mr. Levitt denied her request to change her schedule to accommodate her medical appointments.

---

[22] *Hershgordon v. Pathmark Stores, Inc.*, No. 06-1234, 2007 WL 2142357, at *6 (E.D. Pa. July 24, 2007), *aff'd*, 285 F. App'x 846 (3d Cir. 2008).

[23] 43 P.S. §§ 959, 962(c); *Reilly v. Upper Darby Twp.*, No. 2:09-cv-02465, 2010 WL 55296, at *3 (E.D. Pa. Jan. 6, 2010) ("[C]ourts in this district have consistently dismissed PHRA claims filed prior to the expiration of the PHRC's one-year exclusive jurisdiction period.")

[24] *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citations omitted).

Although Plaintiff has not alleged specific facts that show she was eligible for FMLA leave at the time she requested a shift change, Defendant has not moved to dismiss on this ground. Rather, Defendant maintains 1) that Plaintiff was not denied benefits because she was eventually granted FMLA leave and 2) that Plaintiff has not alleged that she provided adequate notice. Here, however, by alleging that her supervisor denied a request for blocks of time to make medical appointments, Plaintiff has adequately pleaded that she was denied "intermittent" leave as outlined in the FMLA.[25] While employees are required to provide an employer with sufficient notice that she is using leave under the FMLA in order to invoke its protections, an employee can satisfy her notice obligation without "expressly assert[ing] or even mention[ing] her rights under the FMLA"[26] and "without providing enough detailed information to know if the FMLA actually applies.[27] If the employer does not have enough information about the reason for an employee's use of leave, the employer has the obligation to determine whether the leave potentially qualifies under the FMLA.[28] The "critical test" is not whether the employee gave every necessary detail to determine if the FMLA applies, but "how the information conveyed to the employer is reasonably interpreted,"[29] At this stage, Plaintiff has plausibly alleged that her request for time away from work to attend her medical appointments reasonably notified Defendant that the FMLA might apply. Accordingly, Defendant's motion to dismiss is denied with respect to Plaintiff's FMLA interference claim.

---

[25] 29 C.F.R. § 825.202(a), (b)(1); *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 221 (D.N.J. 2015) (citing) ("Federal regulations note that intermittent leave may include leave of periods from an hour or more to several weeks . . . . Examples of intermittent may include leave taken for medical appointments or for regular medical treatment.") (internal quotations and citations omitted).

[26] *Snider v. Wolfington Body Co., Inc.*, No. 16-02843, 2016 WL 6071359, at *6 (E.D. Pa. Oct. 17, 2016).

[27] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 304 (3d Cir. 2012).

[28] *Id.* (internal quotation marks and citations omitted).

[29] *Id.* (internal quotation marks and citations omitted)

However, Plaintiff's allegations are not sufficient to support an FMLA retaliation claim. To state a claim for FMLA retaliation, an employee must allege that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the request for leave." Here, Plaintiff has not alleged any adverse employment action that resulted from her FMLA leave or request for FMLA. For the same reasons discussed with respect to Plaintiff's ADA claim, the denial of request for leave alone does not constitute an adverse employment action for purposes of stating a claim for FMLA retaliation. Accordingly, the Court will dismiss Plaintiff's FMLA retaliation claim without prejudice.

## A. Amendment of the Complaint

In civil rights cases, "district courts must offer amendment— irrespective of whether it was requested— when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."[30] Here, Plaintiff has requested leave to amend any claims that are dismissed. Accordingly, the Court will grant Plaintiff leave to file an amended complaint in the event that she can overcome the pleading deficiencies identified herein.

An order follows.

---

[30] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).